UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ISAAC BINSON and MIRIAM BINSON,

                Plaintiffs,

      - against -

J.E. ROBERT CO., INC., et al.,

                Defendants.
-------------------------------------------------------X

**REPORT    AND**
**RECOMMENDATION**

03 CV 3562 (JG)

Plaintiffs Isaac and Miriam Binson (the "Binsons") commenced this putative class action

on July 22, 2003, alleging that defendants J.E. Robert Co., Inc. ("J.E. Robert"), JER Revenue

Services, LLC ("JER") (together, the "JER defendants"), the Bank of New York (the "Bank"),[1]

Boland & Moskowitz, LLP (the "Boland firm"), and NYCTL 1998-1 Trust (the "98-1 Trust"),

violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the

Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1640 and 1666d.

Presently pending before this Court on referral from the district court is plaintiffs' motion

for leave to amend the Complaint to add additional claims, to add a number of additional

defendants, and to add six new plaintiffs, pursuant to Rules 15(a) and 20 of the Federal Rules of

Civil Procedure.  As a preliminary matter, this Court must determine whether it has subject

matter jurisdiction to consider plaintiffs' motion given the Binsons' voluntary withdrawal of their

claims.  This requires examination of three issues:  (1) whether the oral statement of counsel in

open court constitutes a voluntary dismissal under Fed. R. Civ. P. 41(a)(1); (2) whether this

---

[1]On March 25, 2004, the Bank was dismissed as a defendant pursuant to a stipulation of
the parties.

voluntary dismissal moots the motion to join new plaintiffs which was filed prior to the dismissal; and (3) whether the claims of the putative class survive the dismissal of the Binsons' claims.

Having determined that subject matter jurisdiction is lacking for the reasons set forth below, this Court respectfully recommends that plaintiffs' motion be denied.

## FACTUAL BACKGROUND[2]

A. The Original Claims by the Binsons

The Binson plaintiffs reside at 1530 48th Street, in Brooklyn, New York (the "Property"). (Am. Compl. ¶ 5). In or about May 1998, the Binsons fell behind on their payments of various real property taxes, water rents, sewer rents and surcharges[3] owed to the City of New York (the "City"), which stemmed from their ownership of the Property. (Id. ¶ 26). As a consequence, the nonpayment of these amounts resulted in the assessment of certain tax liens on the Property (the "Tax Liens"). (Id. ¶ 32). The Binsons alleged that the Tax Liens were sold to the 98-1 Trust on or about June 15, 1998, (id. ¶ 32; see also Def. 98-1 Trust Mem. at 3-4), and that at some time thereafter, the JER defendants became the servicers of the Tax Liens for the 98-1 Trust. (Am.

_____

[2]Unless otherwise stated, the facts as set forth herein are derived from plaintiffs' Proposed First Amended Complaint ("Am. Compl."), dated February 15, 2005, and for purposes of this motion are deemed to be true.

[3]Defendant 98-1 Trust contends that the Binsons also fell behind in their payment of a Fire Prevention Inspection charge ("FPIC"). (See NYCTL 1998-1 Trust's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint, Intervene, and Join Additional Defendants, filed May 16, 2005 ("Def. 98-1 Trust Mem.") at 3).

Compl. ¶ 33).

In an effort to resolve the Tax Liens, the Binsons entered into a forbearance agreement in or about October 1998 that required the Binsons to make certain monthly installment payments to reduce the amount of principal and interest owed on the Tax Liens. (Id. ¶ 34). When the Binsons failed to make all of the installment payments in a timely fashion, they were declared in default. (Id. ¶ 35; Def. 98-1 Trust Mem. at 4).

On April 27, 2000, the Binsons entered into a second forbearance agreement, which required them to make periodic payments to reduce the $14,822 in Tax Liens existing at that time. (Am. Compl. ¶ 36). The Binsons further alleged that in May or June 2002, they contacted JER and advised that they were prepared to pay off the Tax Liens in their entirety and inquired as to the amount owed. (Id. ¶ 38).[4] The Binsons claimed that, in response, they were told they owed several thousand dollars in attorneys' fees and costs, in addition to the remaining amounts owed under the Tax Liens. (Id. ¶ 39). They claimed that when they requested an explanation for these fees, they received no response from JER. (Id. ¶ 40).

On or about July 19, 2002, a foreclosure action was filed by the Boland firm against the Binsons' Property, claiming that "there is justly due and owing . . . [a] lien balance of $14,822.17." (Id. ¶ 41). On or about July 22, 2002, JER provided a "Payoff Statement" of the total amount allegedly owed, noting that of the $5,519.90 total amount due, $1,415.90 was owed for the Tax Lien balance and $4,100.00 was owed for "Legal Fees and Costs." (Id. ¶¶ 43-44).

---

[4]Defendant 98-1 Trust has a different version of events. It asserts that the Binsons defaulted again in their payments under the April 27, 2000 forbearance agreement, requiring the retention of the Boland firm to commence foreclosure proceedings. (See Def. 98-1 Trust Mem. at 5).

Two days later, on July 24, 2002, the Binsons received a second "Payoff Statement" from JER, allegedly seeking $6,218.40.  (Id. ¶¶ 45-46).  In this second statement, the amount owed under the Tax Liens was $1,417.30 and the fees and costs owed had increased to $4,801.00.  (Id. ¶ 46).

On or about September 3, 2002, the Binsons entered into a third forbearance agreement.  (Id. ¶ 51).  At that time, JER provided the Binsons with a TILA Disclosure Statement, indicating that defendants were charging interest at the rate of 18% on the "Amount Financed," including "collection costs and legal fees" incurred by defendants.  (Id. ¶¶ 52-53).  The TILA Disclosure Statement set forth the total amount required to pay the Tax Liens in full and provided a payment schedule which deviated from the 2002 Forbearance Agreement.  (Id. ¶¶ 54-55).  Finally, the TILA Disclosure Statement set forth a "Debt Cancellation Fee" of $370.00, which plaintiffs allege was improperly omitted from the Finance Charge on the Statement.  (Id. ¶¶ 58-59).

Despite making each of the payments required by the 2002 agreement, and timely tendering the final payment on December 4, 2002 in accordance with the TILA Disclosure Statement, the Binsons alleged that they received another "Payoff Statement" from defendants seeking an additional $1,759.00 in attorneys' fees.  (Id. ¶¶ 61-62, 64).  When the Binsons' counsel requested an explanation for these fees, defendants acknowledged that the amounts were in error.  (Id. ¶¶ 63-64).  By letter dated March 12, 2003, JER finally acknowledged that the Tax Liens had been fully paid.  (Id. ¶ 67).

B.  Procedural History

The Binson plaintiffs filed this putative class action on July 22, 2003.  Their initial Complaint alleged, among other things, that defendants routinely and systematically charged

4

delinquent taxpayers a debt cancellation fee which defendants were not authorized to charge under federal or state law or under the parties' agreements without listing the fee as a finance charge on the statement provided to the plaintiffs as required by the TILA. (Compl. ¶ 44).[5] More generally, plaintiffs alleged that the JER defendants and the 98-1 Trust committed violations of the TILA by collecting amounts in excess of those permitted by contract or law, and by failing to clearly set forth in the TILA Disclosure Statements information required by the TILA. Plaintiffs further alleged that the actions of the JER defendants and the 98-1 Trust constituted deceptive and misleading practices under New York General Business Law § 349 (id. ¶¶ 67, 71, 74-76), and that they violated New York General Obligations Law § 5-501 by charging interest in excess of 16% of the amount financed. (Id. ¶ 79).

In the initial Complaint, plaintiffs alleged that the Boland firm violated the FDCPA by failing to include certain information in their initial communications with the Binsons as required by 15 U.S.C. § 1692g, including the validation notice, and that the firm attempted to collect amounts for attorneys' fees, debt cancellation fees, and service of process fees, which were never incurred, in violation of 15 U.S.C. §§ 1692e, 1692f. (Id. ¶¶ 56, 59-64).[6]

Following the filing of the initial Complaint on July 22, 2003, defendants filed answers in October and November 2003, and discovery commenced with the service of plaintiffs' Rule

---

[5]Citations to "Compl." refer to the initial Complaint in this action, filed July 22, 2003.

[6]The Proposed First Amended Complaint, which is dated February 15, 2005, sought to add a claim that the Boland defendants violated the FDCPA, 15 U.S.C. § 1692e(2)(a), by indicating in the foreclosure action that there was $14,822.17 owed by the Binsons when they were aware that was not true. (Id. ¶¶ 171-72). As noted infra at page 8, all of the claims against the Boland firm have been withdrawn.

26(a)(1) disclosures in January 2004. (Pls.' Mem. at 1).[7] During the course of a conference before this Court on March 18, 2004, plaintiffs indicated their intention to file an amended complaint. (Id. at 2). Plaintiffs' counsel refrained from filing the motion at the suggestion of JER's counsel that they wait to amend until they received JER's initial Rule 26 disclosures. (Id.) When the disclosures were not produced, plaintiffs' counsel wrote letters dated May 18, 2004 and June 1, 2004, requesting production of JER's Rule 26 disclosures and reiterating their intent to file a motion to amend. (Id.)

By Notice of Motion dated July 30, 2004 (the "2004 Motion"), plaintiffs sought permission to amend their Complaint to add claims on behalf of two new plaintiffs, Angela Hope-Weusi ("Hope-Weusi") and Jeanette Williams ("Williams"), each of whom asserted claims under the FDCPA, TILA, and claims of common law breach of contract and unjust enrichment. In addition, the proposed amended complaint submitted in connection with the 2004 Motion added an additional defendant, the NYCTL 98-2 Trust (the "98-2 Trust"), and sought to assert claims of unjust enrichment against all defendants.

The JER defendants, the 1998-1 Trust, and the Boland firm opposed the 2004 Motion to amend on grounds of futility, arguing that the new plaintiffs failed to state claims under either the FDCPA or TILA and that any such claims would be time-barred. In addition, defendants argued that plaintiffs' motion to join these new plaintiffs was improperly brought as a motion to amend under Rule 15 of the Federal Rules of Civil Procedure, and that they had failed to satisfy the

---

[7]Citations to "Pls.' Mem." refer to the Plaintiffs' Memorandum of Law in Support of Plaintiffs' and Proposed Plaintiffs' Motion to Amend the Complaint pursuant to Fed. R. Civ. P. 15(a) and to Intervene and Join Additional Defendants pursuant to Fed. R. Civ. P. 20, filed February 15, 2005.

requirements for joinder set forth in Rules 20 and 24 of the Federal Rules of Civil Procedure.

At the time the plaintiffs filed the 2004 Motion, they claim they still had not received

much of the requested discovery from JER. (Pls.' Mem. at 5). In response to plaintiffs'

discovery requests served in September 2004 and November 2004, JER provided computerized

information, which plaintiffs allege lists every instance in which defendants sought to assess a

discontinuance fee, and a document entitled "Overpayment Log," which allegedly indicates

nearly 3,800 instances in which delinquent taxpayers were overcharged at the time of final

payoff. (Id. at 4-5).

Based on this information as to the extent of the alleged violations, plaintiffs indicated to

this Court in a letter dated January 19, 2005 and in a telephone conference held on January 24,

2005, that they wished to further amend the Complaint to add "other tax debtors who wish to

intervene as class action plaintiffs in this action." (See Letter of Mark Kaufman, Esq., dated

January 19, 2005 at 1; Minute Entry, January 24, 2005). Based on this request, the Court

reserved decision on the already pending 2004 Motion to amend in order to allow the parties to

present papers on the issues raised by the revised motion to amend. (Minute Entry, January 24,

2005).

On February 15, 2005, plaintiffs filed a second Motion to Amend/Correct the Complaint

(the "2005 Motion"). In the 2005 Motion, plaintiffs no longer included Williams and Hope-

Weusi in their proposed Amended Complaint. Instead, in the 2005 Motion, plaintiffs move

pursuant to Rules 15(a) and 20 of the Federal Rules of Civil Procedure to join six new plaintiffs,

Thomas Boyd and Joan Grant Boyd, Sybil Taylor, Randa Jones, Humberto Meneses, and Tonya[8]

---

[8]Ms. Warters' first name "Tonya" is spelled with an "o" in paragraph 31 of the Proposed
First Amended Complaint and with an "a" ("Tanya") in paragraphs 142 and 143.

Warters (collectively, the "Prospective Plaintiffs"), as well as several additional defendants, the

NYCTL 1996-1 Trust (the "96-1 Trust"), the NYCTL 1997-1 Trust ("the 97-1 Trust"), the

NYCTL 1997-2 Trust (the "97-2 Trust"),[9] and the NYCTL 1991-1 Trust (the "99-1 Trust")

(collectively, the "Proposed Trust Defendants").  Plaintiffs also seek to add new claims of breach

of contract and unjust enrichment under New York State common law.

　　　With respect to each of the Prospective Plaintiffs, the Proposed First Amended Complaint

alleges that tax liens were assessed against their respective properties, which liens were

eventually assigned to one of the defendant Trusts. (Am. Compl. ¶¶ 27, 29, 30, 31, 68-69, 90-92,

117-18[10], 120-21, 142, 143, 144).  The Proposed First Amended Complaint alleges that the

Prospective Plaintiffs were charged debt cancellation or discontinuance fees in violation of

Sections 1692e and f of the FDCPA.  (See, e.g., id. ¶¶ 81-84, 93-104, 108-114, 130,[11] 132-38,[12]

154-56).  The Prospective Plaintiffs further allege that although they eventually received refund

checks, the amounts refunded did not include interest. (Id. ¶¶ 88-89, 102-03, 113-14, 140-41,

157[13]-58).

　　　Shortly after filing the 2005 Motion, plaintiffs' counsel submitted a letter confirming that

the 2005 Motion was intended to supersede and not to supplement the 2004 Motion.  (See Letter

---

[9]Defendant 98-1 Trust contends that there is no such entity as the "97-2 Trust."  (Def. 98-1 Trust Mem. at 2 n.1).

[10]It appears that certain language relating to second lien on Ms. Taylor's property may have been omitted from the Amended Complaint, including paragraph 119.

[11]There are two identical paragraphs numbered 130 in the Amended Complaint.

[12]Paragraph 139 was omitted from the Amended Complaint.

[13]There are two identical paragraphs with the number 157.

of Mark Kaufman, Esq., dated March 9, 2005).  Thus, based on this representation, it appears

that plaintiffs no longer seek to join Ms. Hope-Weusi and Ms. Williams in the action since their

names do not appear in the Proposed First Amended Complaint filed as part of the 2005 Motion.

On September 16, 2005, while the 2005 Motion was pending, the parties entered into a

Stipulation withdrawing the plaintiffs' motion insofar as they were seeking to assert claims and

obtain relief from the Boland firm.

## DISCUSSION

### I. Subject Matter Jurisdiction

Before considering plaintiffs' motion to amend the Complaint, the Court must first

determine whether subject matter jurisdiction exists such that the Court may even entertain

plaintiffs' motion or whether, given the withdrawal of the Binsons' claims, the case is now moot

and the Court is without jurisdiction to consider the motion.

### A. Dismissal Under Rule 41(a)

#### 1) The Withdrawal of the Binsons' Claims

Prior to the filing of the February 16, 2005 Motion to Amend, it was brought to the

attention of this Court that the Binsons had failed to comply with this Court's Order to produce

certain discovery which had been outstanding since April 2004.  On January 26, 2005, this Court

ordered the Binsons to comply and produce the discovery within sixty days, by March 26, 2005.[14]

---

[14]It was during this interim period following the issuance of the January 26, 2005 Order requiring the production of discovery that the plaintiffs filed their motion to amend, on February 16, 2005.

On April 26, 2005, when plaintiffs still had not complied, the Court Ordered plaintiffs to provide an explanation and show cause by May 10, 2005, why sanctions should not be imposed for their failure to comply. Following a letter from plaintiff's counsel filed on May 10, 2005, the Court set a final deadline for compliance of May 23, 2005.

At a conference with this Court on May 26, 2005, counsel for plaintiffs indicated that their clients were apparently unwilling to comply with the Court's Order and plaintiffs' counsel informed the Court that they were withdrawing the Binsons' claims.[15] Defendants agreed to the withdrawal of the Binsons' claims so long as it was with prejudice. The parties' agreement was recorded by the Court and reflected in the Court's notes of the conference.

It should be noted that less than one week before, on May 20, 2005, plaintiffs' counsel had commenced a new class action, captioned Boyd v. J.E. Robert Co., Inc., No. 05 CV 2455, brought on behalf of the Prospective Plaintiffs (the "new action").[16] The allegations in the complaint filed in the new action are virtually identical to the claims which the Prospective Plaintiffs seek to assert if allowed to join in this case.

---

[15]The plaintiffs initially disputed whether the claims were withdrawn or dismissed. (See Plaintiffs' Reply Memorandum of Law in Further Support of Motion for Leave to Amend Complaint, to Intervene and to Join Additional Defendants, filed June 20, 2005 ("Pls.' Reply Mem.") at 2). However, plaintiffs later declined the Court's suggestion that they bring "a motion seeking to clarify that the purportedly voluntary withdrawal with prejudice of the Binsons' claims was, in fact, an involuntary discontinuance." (Letter of Mark Kaufman, Esq., dated June 29, 2005). Plaintiffs explained that they "now believe such a clarification would not impact upon the rights of the putative class under American Pipe." (Id. (citing American Pipe & Const. Co. v. Utah, 414 U.S. 538 (1974))).

[16]Plaintiffs represented that they had not yet served the complaint in the new action, "preferring to move forward through intervention here." (Pls.' Reply Mem. at 1). Waivers of Service were returned executed from all defendants save the 97-2 Trust in October 2005. (See discussion supra page 8 n.9 regarding the alleged 97-2 Trust).

2)  The Parties' Contentions

Defendants contend that once a stipulation dismissing an action has been filed, the court is divested of jurisdiction and may not consider any further matters.  (Defs.' Sur-Reply at 2)[17] (citing GMAC Commercial Mortgage Corp. v. LaSalle Bank Nat'l Ass'n, 213 F.R.D. 150 (S.D.N.Y. 2003)).  Defendants contend that even though plaintiffs did not file an actual stipulation of dismissal, plaintiffs' counsel orally sought dismissal before this Court, which was with defendants' consent, constituting a voluntary dismissal under Federal Rule of Civil Procedure 41.  (Id. at 3 (citing Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F. 3d 314, 318 (2d Cir. 2005) (hereinafter "Role").  Defendants contend that since the Prospective Plaintiffs were not parties to the action at the time of the dismissal, they have no status to complain, see Mutual Produce Inc. v. Penn Cent. Transp. Co., 119 F.R.D. 619, 620 (D. Mass. 1988), and, that to the extent that their motion could be construed as a  motion to intervene,[18] their motion does not convey party status until "intervention is granted."  Dist. of Col. v. Merit Systems Protection Bd., 762 F.2d 129, 132 (D.C. Cir. 1985).

---

[17]Citations to "Defs.' Sur-Reply" refer to the Sur-Reply in Opposition to Motion to Amend and Intervene filed by the JER defendants on July 15, 2005.

[18]Plaintiffs' original motion papers filed on February 16, 2005 refer only to Rules 15 and 20 as the basis for their motion to join the Prospective Plaintiffs.  (See Pls.' Mem. at 1, 5-8). While the motion papers do refer in the title to a motion "to [i]ntervene," even there the intervention is stated to be "[p]ursuant to FRCP 20," and no other mention of intervention appears anywhere in that Memorandum.  In their Reply papers, however, plaintiffs argue that the Prospective Plaintiffs are seeking to "intervene" in the action.  (See Pls.' Reply Mem. at 1-10). Although Rule 20 governs the joinder of new parties to an already existing action, the intervention of new plaintiffs is governed by Rule 24 of the Federal Rules of Civil Procedure, which provides the standards for determining whether a party may intervene as of right, see Fed. R. Civ. P. 24(a)(2), or with permission of the court.  See Fed. R. Civ. P. 24(b)(2).  See discussion infra at 21-26.

11

The plaintiffs raise several arguments in response to defendants' assertion that the dismissal of the Binsons divested this Court of jurisdiction to consider their motion to amend. First, they contend that jurisdiction exists because the motion was served and filed on February 16, 2005 prior to the dismissal of the Binsons' claims. (Pls.' Reply Mem. at 3-4). Citing Moore's Federal Practice, the plaintiffs argue that "'[t]he timeliness of permissive intervention should be measured relative to the time when applicants serve the motion to intervene, not when the motion is granted and intervenors are made parties.'" (Id. at 5 (quoting 3B Moore's Federal Practice § 24.13 (1984))).[19]

Plaintiffs further argue that where certain disabling circumstances occur, such as the death of an original plaintiff, which moots that particular plaintiff's claims, "'[i]ntervention is appropriate to maintain the action in the face of potential mootness of named plaintiffs.'" (Pls.' Reply Mem. at 5 (quoting Rivera v. N.Y. City Hous. Auth., No. 94 CV 4366, 1995 WL 375912, at *4 (S.D.N.Y. June 23, 1995))).[20]  Plaintiffs further contend that had the motion to intervene been briefed and argued as originally scheduled, the Binsons' claims would still have been viable and the issue now being raised by defendants would not be before the Court. (Pls.' Reply Mem. at 4). Instead, plaintiffs argue that the Court's refusal to grant intervention under these circumstances would serve to discourage parties from extending professional courtesies to adversary counsel as was done here when plaintiffs' counsel voluntarily agreed to an extension of the briefing schedule. (Id.)

---

[19]This passage from Moore's Federal Practice discusses the timeliness of a motion to intervene in the context of statute of limitations and laches concerns. It did not express a view on the interplay between a motion to intervene and a voluntary withdrawal of a plaintiff's claims.

[20]See discussion infra at 40.

12

3) <u>Effect of Voluntary Dismissal Absent Written Agreement</u>

As an initial matter, Rule 41(a) of the Federal Rules of Civil Procedure governs the

voluntary dismissal of an action, <u>see</u> Fed. R. Civ. P. 41(a) (1) and (2), while Rule 41(b) governs

those circumstances in which an action may be dismissed involuntarily upon motion of defendant

or if initiated by the court. <u>See</u> Fed. R. Civ. P. 41. Subsection (a)(1) of the Rule permits

dismissal by the plaintiff without an order of the court either (1) by simply filing a notice of

dismissal before the answer or motion by the defendant for summary judgment has been filed,

<u>see</u> Fed. R. Civ. P. 41(a)(1)(i); or (2) by filing a stipulation at any time signed by all parties

agreeing to dismissal of the action. <u>See</u> Fed. R. Civ. P. 41(a)(1)(ii). Subsection (a)(2) provides

for dismissal only upon order of the court and under the terms and conditions determined by the

court. <u>See</u> Fed. R. Civ. P. 41(a)(2).

Rule 41(a)(1)(ii) requires the parties to file a stipulation signed by all the parties who

have appeared in the action in order to effectuate a voluntary dismissal. <u>See</u> Fed. R. Civ. P.

41(a)(1)(ii); 8 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 41.34[4][b]. However, the

Second Circuit has clearly held that a voluntary dismissal of an action under Federal Rule of

Civil Procedure 41(a) can be effected absent a written agreement. <u>See</u> <u>Role</u>, 402 F.3d at 318. In

<u>Role</u>, the Second Circuit held:

> Federal Rule of Civil Procedure 41 sets forth the procedure for
> voluntary dismissal of an action. . . . [The] question presented to us
> is whether the oral stipulation of dismissal entered into by the
> parties before [the magistrate judge] is enforceable despite the fact
> that no formal stipulation, signed by the parties, was filed. In
> <u>Orsini v. Kugel</u> we had occasion to note that 'an oral stipulation in
> open court can effect dismissal.' 9 F.3d 1042, 1045 (2d Cir. 1993)
> (citations omitted). While this language was dicta in <u>Orsini</u>, we
> see no reason to change our view now, with the issue squarely
> presented. We therefore hold that a voluntary, clear, explicit, and

13

> unqualified stipulation of dismissal entered into by the parties in
> court and on the record is enforceable even if the agreement is
> never reduced to writing, signed, or filed, as contemplated by Fed.
> R. Civ. P. 41(a).

Id.; see also In re Cuffee, 232 B.R. 53, 55-56 (E.D.N.Y.) (upholding oral Rule 41(a)(1) voluntary

dismissal made on the record in open court), aff'd, 201 F.3d 430 (2d Cir. 1999).[21]  Thus, courts

have accepted stipulations of dismissal that are made orally in open court, see Pipeliners Local

Union No. 798, Tulsa, Okla. v. Ellerd, 503 F.2d 1193, 1199 (10th Cir. 1974), or during the

course of oral argument over the telephone.  See Eitel v. McCool, 782 F.2d 1470, 1472 n.3 (9th

Cir. 1986).  Once the parties to an action agree to a dismissal, the dismissal becomes immediately

effective "without order of the court."  Fed. R. Civ. P. 41(a)(1).[22]  Indeed, the caselaw is clear

that no judicial approval is required to effectuate a voluntary dismissal under Rule 41(a)(1).  See

Mutual Produce, Inc. v. Penn Cent. Transp. Co., 119 F.R.D. at 620 (citing cases).

   Here, when threatened with a recommendation by this Court to dismiss the Binsons'

claims pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure as a sanction for

failing to comply with various discovery orders entered by this Court, plaintiffs' counsel

voluntarily agreed before this Court to withdraw the Binsons' claims.  It was very clear from

counsel's statements that the Binsons had no intention of complying with their discovery

---

[21] In Role and in In re Cuffee, the voluntary dismissal was memorialized in a
contemporaneous record of the hearing before the magistrate judge or bankruptcy judge.  In this
case, a contemporaneous written record was made by the Court during the conference at which
the plaintiffs voluntarily withdrew their claims, and the withdrawal was recorded on the docket
sheet in the Court's Minute Entry, which states, "[p]laintiffs['] counsel agrees to withdraw
claims by Binsons based on failure to comply with Order to produce tax returns.  Dismissal shall
be with prejudice."  (Minute Entry of May 26, 2005).

[22]This language "without order of the court" applies to both voluntary dismissals effected
pursuant to Rule 41(a)(1)(i) and pursuant to Rule 41(a)(1)(ii).

obligations even in the face of explicit orders from this Court.  Therefore, counsel had no choice

but to agree to their dismissal; the Binsons clearly would not be considered appropriate class

representatives given their failure to comply with the Court's order, and, in any event, they faced

possible dismissal of their claims with prejudice[23] as a sanction for failing to comply with a Court

Order, pursuant to Rule 37(b)(2)(C).  See 8 James Wm. Moore et al., Moore's Federal Practice §

41.52[2] (discussing the interplay between Rule 41(b) dismissals and dismissals pursuant to Fed.

R. Civ. P. 37(b)(2)(C) for disobedience of a discovery order).  Thus, the agreement to withdraw

the Binsons' claims was docketed in the record of the proceedings before this Court, and the

agreement is enforceable under Rule 41(a)(1).


B.  Mootness of Plaintiffs' Claims

1) Standards

Defendants correctly point out that a once a dismissal under Rule 41(a)(1) is effected, the

case is moot and the court is deprived of jurisdiction to enter further orders or to consider other

motions.  See Gambale v. Deutsche Bank AG, 377 F.3d 133, 139 (2d Cir. 2004); see also 8

James Wm. Moore et al., Moore's Federal Practice § 41.34[6][g] (citing cases).  With certain

specific exceptions,[24] the court may not consider any pending motions or proceed any further

---

[23]Generally, unless the parties specify otherwise, a voluntary stipulation of dismissal
under Rule 41(a) terminates the action without prejudice, see Poloron Prods., Inc. v. Lybrand
Ross Bros. & Montgomery, 534 F.2d 1012, 1017 (2d Cir. 1976), and the court may not provide
that the dismissal be with prejudice unless the parties agree.  See 8 James Wm. Moore et al.,
Moore's Federal Practice §§ 41.34[3].  In this case, however, the defendants agreed to the
dismissal of the Binsons' claims, but with prejudice, as noted in the Court's Minute Order of
May 26, 2005.

[24]In the limited circumstance where there is a pending motion for sanctions pursuant to
Fed. R. Civ. P. 11, see, e.g., Cefali v. Buffalo Brass Co., Inc., 748 F. Supp. 1011, 1015-16

with the action once a Rule 41(a)(1) dismissal renders the case moot.  Id. §§ 41.34[6][g], [h] (citing cases).

The doctrine of mootness is "based upon the case or controversy requirement of Article III of the Constitution."  Fox v. Bd. of Trs. of the State Univ. of N.Y., 42 F.3d 135, 140 n.2 (2d Cir. 1994) (citing Honig v. Doe, 484 U.S. 305 (1988); Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990), cert. denied, 515 U.S. 1169 (1995)).  Once the case is moot, "the federal courts 'lack[ ] subject matter jurisdiction over the action.'"  Id. at 140 (quoting New York City Employees' Ret. Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir. 1992)).  The doctrine of mootness requires that the litigants maintain a "'legally cognizable interest in the outcome'" of the litigation.  Id. (quoting County of L.A. v. Davis, 440 U.S. 625, 631 (1979)).  In the absence of such an interest, "federal courts are without power to decide questions that cannot affect the litigants in the case before them."  North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam).  Any such defect in subject matter jurisdiction cannot be waived.  See Fox v. Board of Trs. of State Univ. of N.Y., 42 F.3d at 140 (citing Alston v. Coughlin, 109 F.R.D. 609, 612 (S.D.N.Y. 1986), and Fed. R. Civ. P. 12(h)(3)).

## 2) Plaintiffs' Motion to Amend

Based on the Binsons' voluntary dismissal of their claims, it is clear that they no longer

---

(W.D.N.Y. 1990); see also Blancato v. St. Mary Hosp., No. 91 CV 4114, 1993 WL 114421, at *4 (E.D. Pa. Apr. 12, 1993), or a motion to vacate a dismissal under Fed. R. Civ. P. 60(b), see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 318 (1994), the court maintains jurisdiction to consider the motions despite entry of a Rule 41(a)(1) dismissal. The court, however, lacks jurisdiction to enforce a settlement agreement (id.), or consider a motion for summary judgment.  See, e.g., Meinecke v. H&R Block Income Tax Sch., Inc., 66 F.3d 77, 82 (5th Cir. 1995).

have a "case or controversy" sufficient to satisfy the requirement of Article III of the

Constitution, necessary to confer subject matter jurisdiction on this Court. Plaintiffs contend,

however, that the Court should not dismiss the entire action because, at the time of the

withdrawal, the plaintiffs had a pending motion for joinder and intervention. (Pls.' Reply Mem.

at 1).

As a preliminary matter, the Court notes that there is a difference between the

requirements for permissive joinder under Rule 20 of the Federal Rules of Civil Procedure and

those for permissive intervention under Rule 24. Rule 20, which is the Rule relied upon and

cited by plaintiffs in their moving papers, provides:

> All persons may join in one action as plaintiffs if they
> assert any right to relief jointly, severally, or in the alternative
> in respect of or arising out of the same transaction, occurrence,
> or series of transactions or occurrences and if any question of
> law or fact common to all these persons will arise in the action. . . .

Fed. R. Civ. P. 20(a). The purpose of Rule 20 is "to promote trial convenience and to expedite

the resolution of disputes, thereby preventing multiple lawsuits." Blesedell v. Mobil Oil Co., 708

F. Supp. 1408, 1421 (S.D.N.Y. 1989) (citing Mosley v. General Motors Corp. ("Mosley"), 497

F.2d 1330, 1332 (8th Cir. 1974). It is also designed to "'protect those who already are parties by

requiring the presence of all persons who have an interest in the litigation so that any relief that

may be awarded will effectively and completely adjudicate the dispute.'" Delcon Constr. Corp.

v. United States Dep't of Housing & Urban Dev., 205 F.R.D. 145, 147 (S.D.N.Y. 2002) (quoting

7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil

2d § 1604, at 42).

Permissive joinder under Rule 20 is not automatic; there are two requisites to joinder: "(1) a right to relief must be asserted by, or against, each plaintiff . . . relating to or arising out of the same *transaction or occurrence, or series of transactions or occurrences*; and (2) some *question of law or fact common* to all the parties must arise in the action." Mosley, 497 F.2d at 1333 (emphasis added); see also Blesedell v. Mobil Oil Co., 708 F. Supp. at 1421. Joinder is proper under this Rule only if both requirements are satisfied. See Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1095 (2d Cir. 1992). With respect to the first prong of the test, the courts have made it clear that in determining whether a claim arises out of the same transaction or occurrence, the courts should pursue a "case by case approach," Blesedell v. Mobil Oil Co., 708 F. Supp. at 1421 (citing Mosley), with the understanding that the word "'transaction' is a word of flexible meaning," supporting the joinder of all "'logically related claims.'" Id. (quoting Mosley, 497 F.2d at 1333); see also Martinez v. Robinson, No. 99 CV 11911, 2001 WL 498407, at *5 (S.D.N.Y. May 10, 2001). With respect to the second prong of the test necessary to sustain permissive joinder under Rule 20, the plaintiff must establish that there is a question of law or fact common to all; "[t]he rule does not require that *all* questions of law and fact raised by the dispute be common." Blesedell v. Mobil Oil Co., 708 F. Supp. at 1422 (emphasis in original).

Party joinder is a procedural mechanism always available as an initial matter to the plaintiffs, see 4 James Wm. Moore et al., Moore's Federal Practice § 20.02[1][b], [c], and the proper method by which to effect joinder is through a motion to amend filed by the plaintiff. Id. § 20.02[2][a][ii]. Although Rule 20 governs the procedural aspects of joinder, it does not address the substantive rights of the parties, and "the court must assess whether there is subject matter jurisdiction over the case as the plaintiff has structured it." Id. § 20.02[5]. In the absence

18

of subject matter jurisdiction, the court must dismiss the claims.  Id.  Most importantly, Rule 20 may not be invoked by a nonparty seeking to join the lawsuit.  See Thompson v. Boggs, 33 F.3d 847, 858 n.10 (7th Cir. 1994), cert. denied, 514 U.S. 1063 (1995); City of Tampa v. Fourth Tug/Barge Corp., 163 F.R.D. 622, 624 (M.D. Fla. 1995).  Instead, a nonparty may, under appropriate circumstances, move to intervene.  4 James Wm. Moore et al., Moore's Federal Practice § 20.02[2][c] (citing Fed. R. Civ. P. 24).

Rule 24 of the Federal Rules of Civil Procedure governs the intervention of new plaintiffs to an existing matter.  Unlike a motion for joinder under Rule 20, which must be made by an existing party to the action, Rule 24 allows for the intervention of a new party to an action in the absence of a motion from an already existing party.  Rule 24(a)(2) governs intervention as a matter of right, while Rule 24(b)(2) provides the standards for permissive intervention.  Under Rule 24(a)(2), to intervene as of right, the party seeking to intervene must show that "(1) the application is timely; (2) 'the applicant claims an interest relating to the property or transaction which is the subject matter of the action. . . .' (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party."  Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984) (internal quotation omitted); see also Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D. 154, 159 (S.D.N.Y. 2000); Citizens for an Orderly Energy Policy, Inc. v. Suffolk County, 101 F.R.D. 497, 499-500 (E.D.N.Y. 1984).

Rule 24(b)(2) provides for permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  Similar to the requirements for class actions under Rule 23, the courts have held that a "common

question of law or fact" exists where the intervenor has a claim against a defendant that is
identical to the claim being asserted by the existing plaintiff.  See 6 James Wm. Moore et al.
Moore's Federal Practice § 24.11; see also Fed. R. Civ. P. 23.  In addition, the court is granted
"broad discretion" to grant or deny permissive intervention considering such factors as prejudice
to the existing parties and undue delay.  See Sackman v. Liggett Group, Inc., 167 F.R.D. 6, 22
(E.D.N.Y. 1996) (citing New York News, Inc. v. Kheel, 972 F.2d 482, 487 (2d Cir. 1992));
Rosenshein v. Kleban, 918 F. Supp. 98, 106 (S.D.N.Y. 1996) (same).


   3) Analysis

      From the prior proceedings and the papers filed in this case, there is no question that the
Binsons filed this current motion as a motion to amend pursuant to Rules 15[25] and 20.  To the
extent that the plaintiffs filed a Motion to Amend under Rules 15 and 20, it is clear that upon
withdrawal of their claims, the Binsons no longer had any case or controversy pending before
this Court.  Thus, any motions filed by the Binsons, including the motion to join new parties,
became moot once the Binsons' claims were withdrawn.  As a consequence, this Court may not
consider any pending motions filed by the Binsons now that the Rule 41(a)(1) dismissal has
rendered the case moot.  See 8 James Wm. Moore et al., Moore's Federal Practice §§
41.34[6][g], [h] (citing cases).

---

      [25]Technically, Rule 15(a) of the Federal Rules of Civil Procedure authorizes only a
"party" to amend the "party's pleading."  Fed. R. Civ. P. 15(a).  See Fox v. Board of Trs. of State
Univ. of N.Y., 148 F.R.D. 474, 486-87 (N.D.N.Y. 1993) (holding that because the original
plaintiffs' claims had become moot, Rule 15(a) did not support allowing them to amend their
complaint after a finding of mootness).  Since the Binsons' claims were dismissed, they are no
longer "parties" to the action and therefore may not move to amend the Complaint.

Plaintiffs have attempted to characterize their motion to add the six Prospective Plaintiffs as a motion to intervene. However, in their original motion papers, the plaintiffs never discussed the issue of intervention, instead focusing their arguments on the requirements for joinder set forth in Federal Rule of Civil Procedure 20.[26] The first discussion of "intervention" appears in the defendants' Memoranda in Opposition; plaintiffs quickly followed suit, using the term "intervention" in their Reply Memorandum, which was only filed after the Binsons' claims had been withdrawn. However, even in their Reply Memorandum, plaintiffs never mention Rule 24 nor do they indicate whether the Prospective Plaintiffs were seeking intervention as a matter of right under Rule 24(a)(2),[27] or whether they were seeking permissive intervention under Rule 24(b)(2). As a consequence, nowhere in the papers before the Court do plaintiffs ever directly address the requirements of either Rule 24(a)(2) or 24(b)(2).

Not only have plaintiffs failed to properly address the requirements of intervention in their moving papers, but they have also not complied with the procedural requirements of Rule 24. Rule 24(c) requires that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Although technical noncompliance with these procedural provisions has

---

[26]See supra note 18.

[27]In this case, it appears as though the Prospective Plaintiffs would seek to intervene in this action pursuant to Rule 24(b)(2), which provides for permissive intervention. Indeed, since the Prospective Plaintiffs' claims are not based on "an interest relating to the [Binsons'] property or [the] transaction which is the subject matter of the action" brought by the Binsons, see Fed. R. Civ. P. 24(a)(2), but rather raise common questions of law and fact stemming from the Prospective Plaintiffs' own property interests and transactions with defendants, the motion for intervention is more properly brought under Fed. R. Civ. P. 24(b)(2).

been excused, see, e.g., Werbungs & Commerz Union Austalt v. Collectors' Guild, Ltd., 782 F.

Supp. 870, 874 (S.D.N.Y. 1991), as a general matter, an intervenor cannot simply rely on the

pleadings previously filed by another party. See id.; see also 6 James Wm. Moore et al., Moore's

Federal Practice § 24.20.

Here, apart from the Binsons' Motion to Amend, no separate notice of a motion to

intervene has been filed by the Prospective Plaintiffs as contemplated by Rule 24, nor has there

been a separate pleading setting forth the claims of the Prospective Plaintiffs. See Fed. R. Civ. P.

24(c). Finally, even if the Court were to excuse their failure to comply with these procedural

provisions of the Rule, nowhere in their papers have plaintiffs addressed the elements necessary

for the Court to determine if permissive intervention should be granted or not. Thus, it appears

that there is no motion for intervention currently pending before this Court. Therefore, in the

face of only a motion to amend filed by the Binsons, the case is moot and plaintiffs' motion

should be denied for lack of subject matter jurisdiction.

Plaintiffs argue that since their motion to intervene was pending at the time the Binsons

withdrew their claims, the Court should still consider the motion. (Pls.' Reply Mem. at 3). Even

if the plaintiffs' motion could be construed to be a motion to intervene, it is nevertheless mooted

by the withdrawal of the Binsons' claims. A stipulation of dismissal under Rule 41(a) generally

operates as a dismissal as to all parties, including those who may have filed a motion to

intervene. See, e.g., Mutual Produce, Inc. v. Penn Cent. Transp. Co., 119 F.R.D. at 620 (holding

that where proposed intervenors have moved for intervention and their motions are still pending

at the time a Rule 41(a)(1)(ii) stipulation is entered, the proposed intervenors have no standing to

object to the dismissal, which becomes effective when filed) (citing Nance v. Jackson, 56 F.R.D.

22

463, 471 (M.D. Ala. 1972) (dismissing action pursuant to Rule 41(a)(2) on the ground that "by virtue of this Court's disposition . . . of plaintiff[s'] motion for voluntary dismissal, there is no justiciable action pending in which to intervene"). That is because until the motion for intervention is granted, the proposed intervenor is not a party to the action. Id.; see also 8 James Wm. Moore, et al., Moore's Federal Practice § 41.33[5][c][H].

In GMAC Commercial Mortgage Corp. v. LaSalle Bank National Ass'n, 213 F.R.D. 150, 151 (S.D.N.Y. 2003), the court denied the proposed intervenor's motion to vacate the stipulation of dismissal entered between the parties pursuant to Rule 41(a)(1)(ii), on two grounds: 1) there was no "'case or controversy' pending in light of the dismissal;" and 2) the proposed intervenor was not prejudiced by the dismissal in that the proposed intervenor's rights to bring its own action were not affected. Id. (citing 8 James Wm. Moore et al., Moore's Federal Practice § 41.34[4][b] (3d ed. 2000) (stating "[a] stipulation [under Fed. R. Civ. P. 41(a)(1)(ii)] filed during the pendency of a motion to intervene is effective to dismiss the action, since the proposed intervenors do not become parties within the meaning of the Rule until their motion is granted")); see also Steiner v. Atochem, S.A., No. 89 CV 7990, 2002 WL 1870322, at *4 (S.D.N.Y. Aug. 13, 2002) (citing cases holding that voluntary dismissal moots all pending motions). As the court in Mutual Produce, Inc. noted, "Intervenors were not named parties when plaintiffs and defendants filed their stipulations of dismissal, nor did their filing of a motion to intervene give them party status. Indeed, motions to intervene are not granted automatically, nor does their filing constitute an automatic stay." 119 F.R.D. at 620. See also University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (holding that "[v]oluntary dismissal . . . normally may precede any analysis of subject matter jurisdiction because it is self-executing

and moots all pending motions"). <u>But cf.</u> <u>Securities & Exch. Comm'n v. Keller Bros. Secs. Co.,</u>

<u>Inc.,</u> 30 F.R.D. 532, 533-34 (D. Mass. 1962) (holding that although intervenors "do not formally

become parties to the action until intervention is allowed by the court," where motion to

intervene was timely filed within the period of limitations, the "timeliness of [their] action should

be determined by what they themselves did and not by the factor beyond their control of whether

the court's calendar makes it possible to have their motion heard and allowed within the period

of limitations").[28]

Plaintiffs urge the Court to ignore this settled caselaw, contending that had they not

consented to an extension of time requested by defendants, the motion would have been decided

prior to the mooting of the case. (Pls.' Reply Mem. at 4). However, even if the Court were to

consider the plaintiffs' Reply Memorandum as constituting a motion to intervene by the

Prospective Plaintiffs, the Court would still lack jurisdiction to consider their argument because

the Reply Memorandum was not filed until June 17, 2005, *after* the withdrawal of the Binsons'

claims and after the case had already become moot. As the plaintiffs have recognized, "'[t]he

timeliness of permissive intervention should be measured relative to the time when applicants

serve the motion to intervene, not when the motion is granted and intervenors are made parties.'"

(<u>Id.</u> at 5 (internal quotation omitted)). Thus, even if they are correct, the earliest that the motion

could be considered a motion to intervene, as opposed to the motion filed by the then existing

plaintiffs for joinder, was at a time when the case was already moot by three weeks or so. Thus,

---

[28]In the case of <u>Securities & Exchange Commission v. Keller Bros. Securities Co., Inc.,</u>
the court was concerned only with the timing of the motion to intervene as it related to the
expiration of the statute of limitations. 30 F.R.D. at 533-34. The court was not presented with
the question raised here – namely, whether a pending motion to intervene survives a Rule
41(a)(1) voluntary dismissal by the named plaintiffs.

the Prospective Plaintiffs' motion should be denied on this basis as well.

## C.  The Class Claims

In an effort to salvage this action, plaintiffs argue that the class claims should not be considered moot and that the Court should allow the Prospective Plaintiffs to intervene as new named representatives.  (Pls.' Reply Mem. at 5-10).  For the reasons set forth below, this Court does not agree.

### 1) Mootness in the Context of a Putative Class Action

The same general principles of mootness apply where the case involves a potential, but yet uncertified, class action.  "[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot."  Comer v. Cisneros, 37 F.3d 775, 798 (2d Cir. 1994) (citing Board of Sch. Comm'rs of Indianapolis v. Jacobs, 420 U.S. 128, 129-30 (1975)); see also Brown v. Philadelphia Hous. Auth., 350 F.3d 338, 343-46 (3d Cir. 2003) (applying general rule that "'when claims of the named plaintiffs become moot before class certification, dismissal of the action is required'" and holding that "no implied class certification doctrine can take the place of, or be deemed a substitute for, an appropriate grant of class certification") (quoting Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992)).  That is because in the absence of certification, there is no class action.  See Fed. R. Civ. P. 23(c)(1); see also Baxter v. Palmigiano, 425 U.S. 308, 310 n. 1 (1976) (noting that even though the court had treated case as class action, the court had not certified the class under Rule 23 and therefore it was not a class action).  The unnamed class members are not technically part of the action until

the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted.  See Board of Sch. Comm'rs of Indianapolis v. Jacobs, 420 U.S. at 129 (holding action moot when named plaintiffs challenging school newspaper rules graduated and no class had been properly certified by the district court). Since there is no "case or controversy," see id., the court is without jurisdiction to proceed further.  See Fox v. Board of Trs. of State Univ. of N.Y., 42 F.3d at 140, n.2.

### 2) Mootness in the Context of a Certified Class

The circumstances are different, however, where the class has been certified in accordance with the Federal Rules.  See Sosna v. Iowa, 419 U.S. 393, 399 (1975) (finding that certification of the class "significantly affects the mootness determination").  It is settled law that once a class has been certified, the entire action is not mooted simply because the class representative's claim is mooted.  See County of Riverside v. McLaughlin, 500 U.S. 44, 51-52 (1991) (holding,"'the termination of a class representative's claim does not moot the claims of the unnamed members of the class'") (quoting Gerstein v. Pugh, 420 U.S. 103, 110-11, n.11 (1975)); Comer v. Cisneros, 37 F.3d at 797 (holding that "class certification will preserve an otherwise moot claim").

In Sosna v. Iowa, 419 U.S. at 399, the Supreme Court considered the issue of mootness in the context of a challenge to residency requirements for divorce in Iowa brought by a class certified by the district court.  Even though the named plaintiff had satisfied the residency requirement by the time the case reached the Supreme Court and thus her claim was moot, the

26

Court nonetheless held that the class claims remained "very much alive," id. at 401,[29] because the

certified class "acquired a legal status separate from the interest asserted [by the named

plaintiff]." Id. at 399; see also Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004)

(quoting Sosna). The Court limited the reach of its holding in Sosna by noting that "[i]n cases in

which the alleged harm would not dissipate during the normal time required for resolution of the

controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal

stake in the litigation continue throughout the entirety of the litigation." Sosna v. Iowa, 419 U.S.

at 402. See also Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 755-57 (1976) (extending

Sosna to a situation where the class representative's claim of race discrimination in hiring was

mooted because he had been hired and paid backpay, but finding that unnamed class members

continued to have live controversy); Pavano v. Shalala, 95 F.3d 147, 150 n.4 (2d Cir. 1996)

(considering appeal on behalf of unnamed alleged class members even though named plaintiffs

had received the relief sought); Etuk v. Slattery, 936 F.2d 1433, 1441-42 (2d Cir. 1991) (noting

rule that when class representatives' claims have become moot, "the claims of the unnamed

members of the class may remain alive") (citing County of Riverside v. McLaughlin, 500 U.S. at

51-52); Milonas v. Amerada Hess Corp., No. 73 CV 4263, 1977 WL 1492, at *1 (S.D.N.Y. Nov.

---

[29]The Court in Sosna noted that the case did not present the same situation as in Southern
Pacific Terminal Co. v. ICC, 219 U.S. 498 (1911), where despite the expiration of the ICC order
in controversy, the Court held that the class claims were not moot because the "questions
presented were 'capable of repetition, yet evading review.'"  Sosna v. Iowa, 419 U.S. at 399-400
(quoting Southern Pacific Terminal Co. v. ICC); see also Moore v. Ogilvie, 394 U.S. 814 (1969)
(holding that, because the claims were capable of repetition, the case was not moot even though
the named petitioners had sought to be certified as candidates in an election that had already been
held).  In Weinstein v. Bradford, 423 U.S. 147, 149 (1975), the Supreme Court articulated a two-
prong test to determine whether the "capable of repetition yet evading review" doctrine applies:
(1) whether the action is "too short to be fully litigated prior to its cessation or expiration" and
(2) whether there is "[a] reasonable expectation that the same complaining party [will] be
subjected to the same action again."

4, 1977) (holding that a class action is "representative in nature" and the litigation will continue to exist "even should the issues become moot as to all of the *named* class representatives, provided the controversy remains live for the *unnamed* members of the class") (emphasis in original).  Thus, when the class has been previously certified, the courts have granted intervention to protect the interests of class members who are no longer adequately represented. See, e.g., Milonas v. Amerada Hess Corp., 1977 WL 1492, at *2 (granting intervention and holding that class action was not moot where class had been previously certified and proposed intervenor filed motion to intervene on same day as named plaintiff moved for voluntary dismissal).

### 3) Amendments to Rule 23

The focus on certification in the context of a mootness analysis is consistent with the thrust of the recent amendment to Rule 23 of the Federal Rules of Civil Procedure, dealing with class actions.  Rule 23(c)(1)(A) states clearly that "the court must – at an early practicable time – determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  The Rule further specifies the requirements for the certification order, including a definition of the class and the class claims, issues, or defenses.  Fed. R. Civ. P. 23(c)(1)(B).  These requirements were added to Rule 23 in 2003 and make it clear that the courts may no longer treat an action as if it were implicitly a class action in the absence of the analysis for certification required by the Rule.  See Brown v. Philadelphia Hous. Auth., 350 F.3d at 343-46 (holding that there could be no implied certification where proper class certification had not taken place pursuant to Rule 23); see generally, 5 James Wm. Moore, et al., Moore's Federal Practice §

23.80[3] (noting that cases recognizing uncertified actions as class actions were "erroneously decided" and that the "post-2003 requirements for the certification order are clearly at odds with the possibility of implicit certification") (citing cases).  But see Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980) (allowing substitution of proposed intervenor as named plaintiff in a case decided prior to the 2003 amendment, where motions for class certification and intervention were pending before the court at the time of plaintiff's death and the mooting of his claims, and noting in dicta that, in the absence of an intervenor at the time of the plaintiff's death, the class claim would be moot, because "[a]s a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified").[30]

Where the class has been certified, Rule 41(a)(1) dismissals are explicitly subject to the requirements of Rule 23(e).  5 James Wm. Moore, et al., Moore's Federal Practice § 23.64[2][b][1]; Fed. R. Civ. P. 23(e)(1)(A).  Rule 23(e), which was also adopted in 2003, provides that the "court must approve any . . . voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class," Fed. R. Civ. P. 23(e)(1)(A) (emphasis supplied), and "must direct notice" of any voluntary dismissal or settlement to members of a certified class, because they would be bound by such a compromise.  Fed. R. Civ. P. 23(e)(1)(B).  The advisory committee note to the 2003 revision of Rule 23 notes that "[t]he new rule requires approval only

---

[30]Decided in 1980 prior to the 2003 amendment to Rule 23, Swan's discussion of the timing of the motion to intervene "assum[es] the existence of a proper class" and suggests that if there were "no proper intervenors . . . to be substituted as named plaintiffs we would see no sound basis for certification of Swan's claims as a class action."  635 F.2d at 102 n.6.  Even if the notion of "implicit class certification" survived the recent amendment to Rule 23, Swan is distinguishable from the instant case in that there, unlike here, the named plaintiff had at least moved for certification prior to the mooting of his claims, and, unlike here, there was in fact a pending motion to intervene in Swan.

if the claims, issues, or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise. . . . [N]otice is *not* required when the settlement binds only the individual class representatives." Id. (emphasis added).  Prior to the adoption of the 2003 amendment, several circuits had held that parties were not free to dispose of a class action even when the class had not been certified unless the court approved of the disposition and provided notice to the class.  See, e.g., Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989); Glidden v. Chromalloy Am. Corp., 808 F.2d 621, 625-28 (7th Cir. 1986); Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970).  The revision to the Rule clarifies this ambiguity and "thus removes whatever protection class members had from actions taken by named plaintiffs to dispose of class claims prior to certification."  5 James Wm. Moore, et al., Moore's Federal Practice § 23.64[2][a].  Rule 41(a)(1) dismissals are now explicitly subject to the Rule 23(e) requirements only after the class is certified.  See id. § 23.64[2][b][i]; Fed. R. Civ. P. 23(e)(l)(A).

### 4)  Exceptions to the Mootness Rule

Thus, the general rule is that unless the class has been certified in accordance with the requirements of Rule 23, the withdrawal of the named plaintiffs' claims renders the entire action moot.  However, in certain limited circumstances, the courts have found exceptions to the mootness rule that "seems to draw a bright line at class certification."  White v. OSI Collection Servs., Inc., No. 01 CV 1343, 2001 WL 1590518, at *2 (E.D.N.Y. Nov. 5, 2001).  Specifically, the courts have recognized the "special problems associated with class action mootness," Comer v. Cisneros, 37 F.3d at 798-99, and held that "'[s]pecial mootness rules apply in the class action

context, where the named plaintiff purports to represent an interest that extends beyond his own.'" Weiss v. Regal Collections, 385 F.3d at 342 (quoting Lusardi v. Xerox Corp., 975 F.2d at 974).

One instance in which the Supreme Court has suggested that courts take a "flexible" approach to questions of mootness in the context of a class action is where there are claims that are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." United States Parole Comm'n v. Geraghty, 445 U.S. 388, 400 (1980). Such "inherently transitory" claims will not be held moot. See id.; see also County of Riverside v. McLaughlin, 500 U.S. at 52 (recognizing principle set forth in Gerstein v. Pugh, and holding that where the claims are "inherently transitory," they do not become moot merely because class certification has not been granted) (quoting United States Parole Comm'n v. Geraghty, 445 U.S. at 399). In two cases involving a challenge to the constitutionality of holding an accused without a judicial determination of probable cause, the Supreme Court allowed the cases to continue where the named plaintiffs' claims naturally became moot after their trials even though there had been no class certified, because it was unlikely that any individual's claims could be decided before they became moot. See County of Riverside v. McLaughlin, 500 U.S. at 52; Gerstein v. Pugh, 420 U.S. at 110 n.11; but see Board of Sch. Comm'rs v. Jacobs, 420 U.S. at 129 (dismissing action where the student plaintiffs had graduated before the class could be certified and noting that there "was inadequate compliance with the requirements of Rule 23(c)"). Whether this exception to the mootness rule applies in a particular case is "intensely factbound." White v. OSI Collection Servs., Inc., 2001 WL 1590518, at *3.

In these cases, the courts have held that, even in the absence of a ruling on a class certification motion, the certification of the class "relates back" to the time of the filing of the original Complaint in order to avoid finding the claims moot.  See Comer v. Cisneros, 37 F.3d at 799 (holding that "under the appropriate circumstances, class certification may relate back to the filing of the complaint") (citing County of Riverside v. McLaughlin, 500 U.S. at 52; Sosna v. Iowa, 419 U.S. at 402 n.11); see also Eckert v. Equitable Life Assurance Soc'y of the United States, 227 F.R.D. 60, 63 (E.D.N.Y. 2005).  Whether the relation back doctrine applies depends upon the particular circumstances of the case "and especially the reality of the claim that otherwise the issue would evade review."  Sosna v. Iowa, 419 U.S. at 402 n.11; see also Swan v. Stoneman, 635 F.2d at 102 n.6 (noting that "the cases embodying the exception to the general rule of mootness involved issues that were likely to evade review. . . ").  Thus, where the claim in question is "'capable of repetition, yet evading review' – that is, where the alleged illegal act is likely to continue but, by its inherent nature, is of such short duration that it is unlikely that any plaintiff could maintain an action challenging it," Novella v. Westchester County, No. 02 CV 2192, 2004 WL 3035405, at *4 (S.D.N.Y. Dec. 29, 2004) (citing Gerstein v. Pugh), courts have applied the "relation back" doctrine to find that the claims did not become moot merely because the motion for class certification had not been granted.  See County of Riverside v. McLaughlin, 500 U.S. at 52; Comer v. Cisneros, 37 F.3d at 799 (considering claims that were "transitory in some sense," and applying relation back doctrine because plaintiffs had filed for class certification less than three months after filing complaint, though court did not consider the motion for over two years); Robidoux v. Celani, 987 F.2d 931, 938-39 (2d Cir. 1993) (finding claims were not moot despite plaintiffs' receipt of public assistance benefits before grant of class

certification, because the nature of the harm was "inherently transitory"). As the court in Weiss v. Regal Collections noted, however, "most of the cases applying the relation back doctrine have done so after a motion to certify the class has been filed." 385 F.3d at 347 (citing cases).

Some courts have extended the Sosna rule of "relation back" to cover the situation where a motion for class certification is pending at the time that the defendant makes an offer of judgment under Rule 68 which would satisfy the named plaintiff's individual claims and otherwise moot the action.[31] See Nasca v. GC Servs. Ltd. P'ship, No. 01 CV 10127, 2002 WL 31040647, at *2-3 (S.D.N.Y. Sept. 12, 2002). In these limited circumstances, application of the "relation back" doctrine is used to prevent defendants from attempting to circumvent a class judgment by "'picking off' or 'buying off' named plaintiffs through the mooting of individual claims – i.e. settling with the named plaintiff after a class action complaint has been filed."[32] Novella v. Westchester County, 2004 WL 3035405, at *4 (surveying Supreme Court and Second Circuit precedents and citing White v. Mathews, 559 F.2d 852, 857 (2d Cir. 1977)); see Weiss v.

---

[31]Generally, settlement of an individual plaintiff's claim would render the action moot because there would no longer be a controversy between the parties. See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 23 (1994); British Int'l Co. Ltd. v. Seguros La Republica, S.A., 354 F.3d 120, 122-23 (2d Cir. 2003); Agee v. Paramount Communications, Inc., 114 F.3d 395, 398-99 (2d Cir. 1997).

[32]Likewise, some courts have made an exception where the Rule 68 offer of judgment was made so early in the action that the plaintiff had not had a reasonable opportunity to move for class certification. See, e.g., Weiss v. Regal Collections, 385 F.3d at 345; McDowall v. Cogan, 216 F.R.D. 46, 47-52 (E.D.N.Y. 2003) (holding offer of judgment to named plaintiff made before defendants had answered did not moot class claims); Nasca v. GC Servs. Ltd. P'ship, 2002 WL 31040647, at *3; Schaake v. Risk Mgmt. Alternatives, Inc., 203 F.R.D. 108, 110-12 (S.D.N.Y. 2001) (finding offer of judgment made only 32 days after filing of complaint did not moot class claims even though no motion for certification had been filed); White v. OSI Collection Servs., Inc., 2001 WL 1590518, at *4 (applying relation back doctrine where defendant made offer of judgment to plaintiff one day after answering and eighteen days before plaintiff sought leave to move for class certification).

Regal Collections, 385 F.3d at 345-48 (applying relation back doctrine "in light of defendants'
tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action"); Nasca v. GC
Servs. Ltd. P'ship, 2002 WL 31040647, at *2 (noting the problem posed by the "picking off" of
named plaintiffs and the concern expressed in Deposit Guarantee Nat'l Bank v. Roper, 445 U.S.
326, 339 (1980)); see also Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1041 (5th
Cir. 1981) (concluding that the case should not be dismissed as moot based on the tender to the
named plaintiffs where there was pending "a timely filed and diligently pursued motion for class
certification"); Susman v. Lincoln Am. Corp., 587 F.2d 866, 869-71 (7th Cir. 1978) (same).

In Deposit Guarantee National Bank v. Roper, the Supreme Court stated:

> To deny the right to appeal simply because the defendant has
> sought to 'buy off' the individual private claims of the named
> plaintiffs would be contrary to sound judicial administration.
> Requiring multiple plaintiffs to bring separate actions, which
> effectively could be 'picked off' by a defendant's tender of
> judgment before an affirmative ruling on class certification could
> be obtained, obviously would frustrate the objectives of class
> actions.

445 U.S. at 339.[33]

Although these cases have applied the relation back doctrine where a motion for class
certification was pending at the time of the Rule 68 offer, in Eckert v. Equitable Life Assurance
Society of the United States, this Court also allowed a putative securities fraud class action to
continue after the individual plaintiff had settled his claims, and permitted a new party to
intervene even though no class motion had been filed because the plaintiff "did not have a

---

[33]The Court in Deposit Guaranty Nat'l Bank v. Roper was careful to note that "[d]ifficult
questions arise as to what, if any, are the named plaintiffs' responsibilities to the putative class
prior to certification; this case does not require us to reach these questions." Id. at 340 n.12.

realistic and reasonable opportunity to move for class certification" where the defendant had not

yet filed its answer.  227 F.R.D. at 63-64.

Other courts, however, have rejected this analysis, holding that where there has been no

motion for class certification filed and the plaintiff accepts a Rule 68 offer of judgment offering

the maximum amount recoverable under the statute and providing complete relief to the named

plaintiff, the "named representative's claim becomes moot . . . [and] the entire case is to be

dismissed for lack of subject matter jurisdiction."  Ambalu v. Rosenblatt, 194 F.R.D. 451, 453

(E.D.N.Y. 2000); see also Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F.

Supp. 2d 157, 160-61 (E.D.N.Y. 2003) (applying reasoning of Ambalu); Tratt v. Retreival

Masters Creditors Bureau, Inc., No. 00 CV 4560, 2001 WL 667602, at *2 (E.D.N.Y. May 23,

2001) ("adopt[ing] Judge Nickerson's opinion [in Ambalu] as being entirely dispositive");

Wilner v. OSI Collection Servs., Inc., 198 F.R.D. 393, 394-96 (S.D.N.Y. 2001) (agreeing with

reasoning in Ambalu while discussing distinguishing facts); cf. Edge v. C. Tech Collections, Inc.,

203 F.R.D. 85, 87-88 (E.D.N.Y. 2001) (finding "a case or controversy still remain[ed]" because

Rule 68 offer of judgment did not offer the maximum amount recoverable under the FDCPA).

Similarly, if the court concludes that plaintiffs have unduly delayed in filing a motion for

class certification, the claims will be found moot.  See Weiss v. Regal Collections, 385 F.3d at

348; Nasca v. GC Servs. Ltd. P'ship, 2002 WL 31040647, at *2; Weiss v. La Suisse, 161 F.

Supp. 2d 305, 319 (S.D.N.Y. 2001) (denying motion to amend the complaint and motion for

class certification filed more than three years after commencement of the action, noting that even

"[a]ssuming arguendo that class certification would be appropriate, I am constrained to deny the

motion because of plaintiffs' tardiness in making it").

Where none of these exceptions to mootness apply and the plaintiffs' claims become moot prior to the filing of a motion for class certification, the Second Circuit has made it clear that an amendment seeking to add new plaintiffs whose claims are not moot under Rule 21 of the Federal Rules of Civil Procedure will not save the action.  See Fox v. Board of Trs. of State Univ. of N.Y., 42 F.3d 135, 144 (2d Cir. 1994) ("Fox VII"), aff'g 148 F.R.D. 474 (N.D.N.Y. 1993) ("Fox VI").  In Fox, the plaintiff students had graduated by the time their First Amendment claims against the State University of New York ("SUNY") had been remanded following various appeals.  148 F.R.D. at 476.  The district court concluded that the plaintiffs' claims were moot but initially permitted an amendment to the Complaint to substitute then-current SUNY students.  Fox v. Board of Trs. of State Univ. of N.Y., 764 F. Supp. 747, 757-58 (N.D.N.Y. 1991) ("Fox V").  On a motion for reconsideration, the district court reaffirmed its finding that the claims were moot and that "none of the exceptions to mootness apply to this case. . . ."  Fox VI, 148 F.R.D. at 483 (citing Fox V, 764 F. Supp at 752-57).  The court however, modified its earlier Order and denied the motion to amend, holding that:

> Rule 21 was . . . not enacted as a means for a party to avoid dismissal on mootness grounds.  If that were so, no case would ever become moot because a party who no longer had the requisite personal stake in the litigation, so as to satisfy the case or controversy requirement of Article III, would only have to move under Rule 21 for substitution of a party who could satisfy that requirement.  That was not the purpose underlying the adoption of Rule 21.

Fox VI, 148 F.R.D. at 484.  The court further noted that the controversy in that case "begs for class certification," id. at 484 n.23, and that the plaintiffs "could have avoided this now seemingly harsh but unavoidable result – dismissal of a lawsuit which they have pursued for years." Id. at 483-84.  The court also rejected the argument that Rule 15 provided a basis for

permitting amendment, comparing the "'attempt to amend the complaint to the procedural posture of a lawsuit in search of a sponsor.'"  Id. (quoting Summit Office Park, Inc. v. United States Steel Corp., 639 F.2d 1278, 1281 (5th Cir. 1981)).  On appeal, the Second Circuit affirmed "for the reasons stated in the thorough analysis of the district court" and noted that "once a case is moot, it is no longer justiciable in federal court and must be dismissed."  Fox VII, 42 F.3d at 144.


    5) Application

At the time of the withdrawal of the Binsons' claims, no class had been certified in this case, and indeed, to date plaintiffs have not moved for class certification.  Thus, under well-established principles of mootness, in the absence of a certification Order issued pursuant to Rule 23, there is no class action and the entire case is moot, unless one of the limited exceptions apply.  See Comer v. Cisneros, 37 F.3d at 799.  Thus, the question is whether the circumstances of this case fall within any of the exceptions to the mootness rule which would permit the certification of a class to relate back to the filing of the complaint.  Here, the Court finds that none of the exceptions apply.

First, the Binson's FDCPA, TILA, and related state law claims are neither "inherently transitory" nor "capable of repetition, yet evading review."  Unlike the claims of the pretrial detainees in County of Riverside or Gerstein v. Pugh, the Binsons' claims would ordinarily "not expire with the mere passage of time."  White v. OSI Collection Servs., Inc., 2001 WL 1590518, at *4 n.7.  Nor are they claims "'acutely susceptible to mootness.'"  Id. (quoting Comer, 37 F.3d at 797).  Indeed, there is nothing that would have prevented the Binsons' claims from being

decided in due course had they not withdrawn their claims. On the contrary, the Binsons

maintained an active case or controversy before this Court for nearly two years before their

claims were voluntarily withdrawn. The claims raised here are hardly the type of claim that

could be said to "evade review."

Second, this is not a case in which the plaintiffs' interest in the case has been terminated

as a result of the "defendants' tactic . . . to 'pick[] off' lead plaintiffs" with early offers of

judgment. Weiss v. Regal Collections, 385 F.3d at 347. Rather, it was the plaintiffs' own

decision not to comply with a Court order that led to the voluntary dismissal of the claims of the

original named plaintiffs. No offer of judgment has been made by any of the defendants here,

and the Court finds no evidence that the defendants intended or attempted to "pick off" the

named plaintiffs in order to avoid a class action.

Not only do the circumstances of this case fall outside the rubric of cases in which the

relation back doctrine has been applied, but even if they did, the plaintiffs have not acted with

due diligence in pursuing a motion for class certification. As noted above, the Binsons pursued

their individual claims and presumably those of the putative class for nearly two years without

moving for class certification at any point. As early as November 2004, plaintiffs possessed an

"Overpayment Log" allegedly indicating nearly 3,800 instances in which delinquent taxpayers

were overcharged at the time of final payoff (see Pls.' Mem. at 4-5). This information may well

have supported a motion for class certification. Even if plaintiffs felt that additional discovery

was necessary, see Weiss v. La Suisse, 161 F. Supp. 2d at 319-20 (denying motion to amend to

add class claims despite plaintiffs' argument that they needed additional discovery before they

could allege class claims and move for certification, and noting the delay and the expiration of

the statute of limitations as to many of the new claims), substantial discovery had been provided

by early February 2005 (see Minute Entry, Jan. 26, 2005), three months before the Binsons

withdrew their claims.  Indeed, plaintiffs had obtained sufficient information about additional

class members in order to move in July 2004 to amend the complaint and then again to file the

instant motion seeking to add six new plaintiffs in February 2005.

However, based on the record currently before this Court, and in the absence of a motion

for class certification, this Court is not in a position to determine whether this case would in fact

properly qualify as a class action under Rule 23.  There has been no evidence presented to

determine the proper class definition, or whether the requirements of numerosity, commonality,

typicality, and adequacy of representation have been satisfied.  See Fed. R. Civ. P. 23(a); see also

Edge v. C. Tech Collections, Inc., 203 F.R.D. at 88-89.  Since plaintiffs have offered no account

for their failure to move for class certification by now and in the absence of any proffered

evidence necessary to determine whether the class should be certified, the Court finds no

mitigating circumstance justifying plaintiffs' undue delay in filing for class certification.

The inapplicability of the "relation back" doctrine, paired with plaintiffs' undue delay in

moving for class certification, leads this Court to conclude that plaintiffs' class claims were

rendered moot by the voluntary withdrawal of the named plaintiffs' claims.  In the absence of a

certified class, the withdrawal of the Binsons' claims moots the case and serves to deprive the

court of subject matter jurisdiction.  See Fox v. Board of Trs. of State Univ. of N.Y., 42 F.3d at

140 (holding that once the case is moot, "the federal courts 'lack[ ] subject matter jurisdiction

over the action'") (quoting New York City Employees' Ret. Sys. v. Dole Food Co., 969 F.2d at

1433).  Thus, the court is prohibited from ruling on any other matters related to the dismissed

action.  See 8 James Wm. Moore et al., Moore's Federal Practice § 41.34[6][g] (citing cases).

Although the plaintiffs filed their Motion to Amend before the withdrawal of the

Binsons' claims, those cases which do not involve a certified class action have held that once the

plaintiff's claims have become moot, there remains no active case or controversy in which to join

or intervene.  See, e.g., Mutual Produce, Inc. v. Penn Cent. Transp. Co., 119 F.R.D. at 620;

Nance v. Jackson, 56 F.R.D. at 471.  (See discussion supra pp. 20-21, 27).   In their Reply

Memorandum, plaintiffs cite Rivera v. New York City Housing Authority in arguing that the

Prospective Plaintiffs should be allowed to intervene to maintain the action even now that the

named plaintiffs' claims are moot.  (Pls.' Reply Mem. at 5 (quoting Rivera, 1995 WL 375912, at

*4)).  In Rivera, the plaintiffs, mobility impaired persons, alleged that New York City Housing

Authority had violated their rights under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the

Americans with Disabilities Act, 42 U.S.C. § 12131, by failing to provide the plaintiffs with

appropriate housing conditions.  1995 WL 375912, at *1.  When the defendants offered to

provide accommodations to a number of the named plaintiffs, the court granted intervention,

finding that "[i]ntervention is appropriate to maintain the action in the face of potential mootness

of named plaintiffs." Id. at *4 (citing Lidie v. California, 478 F.2d 552, 555 (9th Cir. 1973);

Arthur v. Starrett City Assocs., 98 F.R.D. 500, 505 (E.D.N.Y. 1983)).  Unlike the instant case,

however, in Rivera, the motion to intervene was granted at a time when there were still named

plaintiffs who had live claims in the action.  See id.

Similarly, there have been several cases in which the court has permitted a putative class

action to continue with the substitution of an intervenor as a named plaintiff, even in the absence

of a motion for class certification.  See Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424,

40

430-31 (1976); Baxter v. Palmigiano, 425 U.S. 308, 312 n.1 (1976).  However, in these cases, unlike the instant action, the intervenor had intervened long before the named plaintiffs' claims became moot.  See Pasadena City Bd. of Educ. v. Spangler, 427 U.S. at 427, 430-31 (holding that where the government had intervened in the action before defendants had filed an answer, the claims of the putative class members were preserved even after named plaintiff's claims became moot); Baxter v. Palmigiano, 425 U.S. at 312 n.1 (noting that parties had stipulated to the intervention of a new named plaintiff before plaintiff's claims were challenged on appeal).

In summary, even if there had been a properly filed motion to intervene, the withdrawal of the Binsons' claims rendered the entire action moot because no motion was ever filed for class certification.  Therefore, mootness prevents the Court from granting plaintiffs' motion at this time.

Accordingly, the Court respectfully recommends that the Prospective Plaintiffs' request to intervene be denied.


II.  Plaintiffs' Remaining Motions

In light of the Court's conclusion that subject matter jurisdiction is lacking as a result of the withdrawal of the Binsons' claims, this Court has not considered nor made any recommendation as to plaintiffs' other motions for leave to amend the complaint to add new claims or to add new defendants.  Should the court conclude that the class claims were not mooted following the withdrawal of the Binson's claims, this Court respectfully recommends that these outstanding motions be referred back to this Court for further consideration.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report.  Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        June 27, 2006

Cheryl L. Pollak
United States Magistrate Judge

42